# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

PACIFIC SCIENTIFIC ENERGETIC
MATERIALS COMPANY (ARIZONA) LLC, et al.,

    Plaintiffs,

v.            NO. CV-10-02252-PHX-JRG

ENSIGN-BICKFORD AEROSPACE &
DEFENSE COMPANY,

     Defendant.

## MEMORANDUM OPINION & ORDER

Pending before the court are the defendant's Motion to Dismiss, or in the Alternative, to Transfer to the United States District Court for [the District of] Connecticut [Docket 18] and the defendant's Motion to Transfer to the United States District Court for [the District of] Connecticut [Docket 37]. For the following reasons, the motions are **DENIED**.

## I. Background

This case arises out of a series of letters exchanged between the plaintiffs and the defendant regarding the defendant's patent portfolio. In the first letter, the defendant stated that its technology might be of use to the plaintiffs and offered to enter into license negotiations. The plaintiffs allege that as the communications progressed, the defendant accused the plaintiffs of infringing three United States patents. The plaintiffs brought a declaratory judgment action seeking a declaration

that the defendant's patents at issue are invalid, unenforceable, and that the plaintiffs are not directly or indirectly infringing upon them. The plaintiffs additionally allege a state law claim for tortious interference with a contract.

Pacific Scientific Energetic Materials Company (Arizona), LLC ("PSEMC-Arizona") and Pacific Scientific Energetic Materials Company (California), LLC, ("PSEMC-California") (collectively "PSEMC"), are two separate entities. PSEMC-California is a California corporation with its principal place of business in Valencia, California. PSEMC-Arizona is a Delaware corporation with its principal place of business in Chandler, Arizona. The companies, both named plaintiffs, allegedly operate as a single 750-employee unit under their parent company, the Danaher Corporation. (Pls.' Resp. Def.'s Mot. Dismiss [Docket 33], at 2.) The president, executives, and staff all serve PSEMC as a whole, and the companies share accounting, expenses, forecasting, strategic initiatives, planning, and project management. (*Id.*) PSEMC designs, develops, and produces ordnance, pyrotechnics, electronics, laser components, and systems for the aerospace, defense, and commercial industries. (Compl. [Docket 1] ¶ 6.)

The defendant, Ensign-Bickford Aerospace & Defense Company ("Ensign-Bickford"), is a Connecticut corporation with its principal place of business in Connecticut. Ensign-Bickford is also registered to do business in Arizona. It has designated a registered agent for service of process in Arizona and has employees who operate full-time out of an office in Arizona. Although Ensign-Bickford allegedly competes with PSEMC for customers and government and commercial contracts, the parties had discussed the possibility of a cooperative business arrangement before this dispute arose. (*Id.* ¶¶ 8, 11.)

On May 29, 2009, Ensign-Bickford sent a letter to PSEMC's president claiming that Ensign-

Bickford's "technology may be of use under U.S. Government programs . . . in which we understand Pacific Scientific to be involved." (Def.'s Mot. Dismiss Ex. 1 [Docket 18-1], at 3.) Specifically, Ensign-Bickford stated that it owns three patents, Nos. 6,584,907, 6,889,610, and 7,278,658, "which are directed toward an ordnance firing system." (*Id.*) Ensign-Bickford then offered to enter into a licensing agreement with PSEMC. (*Id.*) According to PSEMC, over the course of sixteen months Ensign-Bickford sent several additional letters to PSEMC requesting information regarding PSEMC's activity in the U.S. Government programs and the patents at issue.[1] Ensign-Bickford claimed that its concerns arose out of "information obtained from customers who have sought either alternatives to PSEMC or who have been in the process of considering Ensign-Bickford's system or PSEMC's system who understand [Ensign-Bickford's] patent estate and have expressed that they don't see how it is possible that PSEMC is not in conflict with the Ensign-Bickford patent estate." (Compl. ¶ 18.)

PSEMC maintained that its product, Smart Energetics Architecture ("SEA™"), is "wholly distinct from Ensign-Bickford's patent portfolio in numerous, significant respects" and, therefore, according to the plaintiffs, does not infringe upon Ensign-Bickford's patents. (*Id.* ¶ 14.) PSEMC further informed Ensign-Bickford that it "had no intention of disclosing the detailed, highly confidential, proprietary and sensitive competitive information that Ensign-Bickford requested for its patent infringement allegations, [because PSEMC] fully and reasonably believed it did not infringe Ensign-Bickford's patents." (*Id.* ¶ 16.) PSEMC did not respond to Ensign-Bickford's

---

[1] At some point between May 29, 2009 and November 16, 2009, the presidents of Ensign-Bickford and PSEMC met in Arizona and discussed the relevant patents as well as a potential business collaboration. Additionally, PSEMC (according to the defendant, the California office only) entered into a confidentiality agreement with Ensign-Bickford for the purpose of "exploring a cooperative business arrangement." (Def.'s Mot. Dismiss Ex. 2, at 6.)

September 30, 2010, letter because it felt that communications had stalled and any response was futile. (*Id.* ¶ 22.)

As a result of this dispute, PSEMC filed suit on October 21, 2010, seeking a declaratory judgment that the patents at issue are invalid, unenforceable, and not being directly or indirectly infringed. PSEMC also alleges that Ensign-Bickford tortiously interfered with PSEMC's confidentiality agreements with its customers and potential customers. On January 6, 2011, Ensign-Bickford moved the court to: (1) dismiss the action for lack of personal jurisdiction; (2) dismiss the action for improper venue; (3) decline to exercise its jurisdiction under the Declaratory Judgment Act; (4) dismiss the intentional interference with a contract claim for failure to state a claim upon which relief can be granted; and (5) transfer the case to the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1406 [Docket 18]. On May 5, 2011, Ensign-Bickford filed its Motion to Transfer to the United States District Court for [the District of] Connecticut, this time pursuant to 28 U.S.C. § 1404 [Docket 37]. The motions have been fully briefed, and the matter is ripe for review. The court will address each of Ensign-Bickford's arguments in turn.

## II.    Motion to Dismiss for Lack of Personal Jurisdiction

Ensign-Bickford moves the court to dismiss for lack of personal jurisdiction. According to Ensign-Bickford, general jurisdiction does not exist because its principal place of business is in Connecticut, none of its officers reside in Arizona, its shareholder meeting takes place in Connecticut, and "[n]one of the activities at Ensign's Arizona office relate to the patented products or the patents at issue in this case." (Def.'s Mot. Dismiss, at 7.) The plaintiffs contend that the court has general jurisdiction because, among other things, Ensign-Bickford is registered to do business

in Arizona, has a registered agent for service of process in Arizona, and maintains an office and employees in Arizona. (Pls.' Resp. Def.'s Mot. Dismiss, at 6.) The defendant argues that specific jurisdiction does not exist because the letters and communications exchanged between Ensign-Bickford and PSEMC during discussions about Ensign-Bickford's patent estate are the only contacts directed at the forum state that relate to the claim, and these contacts are insufficient to confer specific jurisdiction. In response, the plaintiffs assert that these letters amounted to accusations of patent infringement, and that the case arises out of these contacts.

   a.    *Standard of Review*

   When a defendant moves to dismiss a patent case for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the court applies Federal Circuit law "because the jurisdictional issue is intimately involved with the substance of the patent laws." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (internal quotation marks omitted); *see also Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002) ("[W]e apply Federal Circuit law to personal jurisdiction inquiries over out-of-state patentees as declaratory judgment defendants."). When the court addresses the jurisdictional question without any discovery, the burden is on the plaintiffs to make a *prima facie* showing that the defendant is subject to personal jurisdiction. *Autogenomics*, 566 F.3d at 1017. In these circumstances, a court must accept the uncontroverted allegations in the plaintiffs' complaint as true and resolve factual conflicts in the affidavits in the plaintiffs' favor. *Id.* (citing *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)). However, the plaintiffs are only entitled to those inferences that are reasonable. *Id.* at 1018.

   To assess whether personal jurisdiction can be exercised over a non-resident defendant, the

court applies a two-step analysis. *Id.* at 1017. First, the court determines whether the long-arm statute of the state in which the federal court sits permits service of process. Second, the court determines whether exercising personal jurisdiction over the defendant would comport with the Due Process Clause.[2] *Id.* (citing *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985))). Because the Arizona long-arm statute is coextensive with the full reach of due process, it is unnecessary in this case to go through the two-step process to determine whether personal jurisdiction exists. Ariz. R. Civ. P. 4.2(a); *see also Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (explaining that when "the state's long-arm statute extends to the limits of due process, the two-part inquiry collapses into one"). Rather, the statutory inquiry merges with the constitutional inquiry, and the analysis centers on whether exercising personal jurisdiction over the defendant is consistent with the Due Process Clause.

Exercising personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has sufficient "minimum contacts" with the forum such that requiring the defendant to defend a lawsuit in the forum would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The plaintiff may satisfy the "minimum contacts" requirement by establishing either "specific jurisdiction" or "general jurisdiction." *See Autogenomics,* 566 F.3d at 1017. Establishing general jurisdiction "requires that the defendant have 'continuous and

---

[2]Because this is a federal question, the Due Process Clause of the Fifth Amendment applies. Although the Supreme Court's constitutional jurisprudence of personal jurisdiction analyzes only state and diversity cases, the Federal Circuit applies the minimum contacts standard in federal cases. *LSI Industries, Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 n.5 (Fed. Cir. 2000).

systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Id.* at 1017 (citing *Silent Drive v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003)). "Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Id.* Because the court finds that there is general jurisdiction over Ensign-Bickford in Arizona, the court need not address whether specific jurisdiction exists.

General jurisdiction is appropriate only where the defendant's contacts with the forum are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). Applying the principle of general jurisdiction requires navigating between two Supreme Court mileposts: *Helicopteros*, in which the Court found general jurisdiction lacking, and *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), in which the Court found it satisfied. In *Perkins*, an Ohio court exercised personal jurisdiction over a Philippine corporation that was operating in Ohio as its "home away from home" during the Japanese occupation of the Phillippines. *See* 342 U.S. at 438, 445. The president of the company kept an office in Ohio, where he maintained files, held meetings, and carried on correspondence. These contacts convinced the Court that the foreign company was "carrying on in Ohio a continuous and systematic, but limited, part of its general business," thus justifying exercising personal jurisdiction over the defendant. *Id.* at 438. In *Helicopteros*, by contrast, the defendant never had an office in the Texas, never was authorized to perform business in Texas, never had a registered agent for service of process, and never had an employee based there, performed any services there, or sold any product there. *See* 466 U.S. at 411. In short, the Court found that the defendant's fleeting contacts with Texas did not

"constitute the kind of continuous and systematic general business contacts the Court found to exist in *Perkins*." *Id.* at 416.

Once a party has sustained a *prima facie* showing of minimum contacts, the court must determine whether exercising jurisdiction would be reasonable. *Patent Rights Prot. Grp. v. Video Gaming Tech.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010). The factors commonly considered as part of this analysis include: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the importance of the chosen forum to the plaintiff's interest in obtaining relief; (4) the most efficient forum for judicial resolution of the dispute; and (5) the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). When the defendant purposefully directs its activities at the forum, it must present a compelling case that the presence of other factors renders jurisdiction unreasonable. These compelling cases "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Patent Rights Prot. Grp.*, 603 F.3d at 1369 (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994)).

        *b.*     *Discussion*

To determine whether a defendant's activities with the forum state are "continuous and systematic," the court must look at the facts in each case and make a determination. *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). Ensign-Bickford has the following contacts with Arizona: (1) it is registered to do business in Arizona; (2) it has designated a registered

agent for service of process; (3) it maintains an office in Tempe, Arizona;[3] and (4) as of January 2011, two engineers worked at the Tempe office as Ensign-Bickford employees. Furthermore, Ensign-Bickford does not controvert the plaintiffs' assertion that Ensign-Bickford has negotiated and entered into an asset purchase agreement with Special Devices, Incorporated, an Arizona-based corporation, and is a major supplier to Raytheon Missile Systems and Orbital Sciences Corporation in Arizona. (Pls.' Res. Def.'s Mot. Dismiss, at 6.) *See LSI Indus. Inc.*, 232 F.3d at 1375 (finding that the defendant's millions of dollars of sales of lighting products in Ohio over several years combined with its broad distributorship network in Ohio established general jurisdiction over the defendant in Ohio). The plaintiffs point to several additional contacts: (1) Ensign-Bickford solicited and hired Arizona residents, including former PSEMC employees; (2) it sent employees to continuing education courses in Arizona; and (3) it attends supplier conferences in Arizona. Considering all of these contacts together, I find that the plaintiffs have made a *prima facie* showing that Ensign-Bickford is conducting a continuous and systematic, but limited, part of its general business in Arizona, and therefore has sufficient minimum contacts with Arizona. *See Perkins*, 342 U.S. at 438.[4]

---

[3] Ensign-Bickford does not suggest that either the employees operating in Arizona or the business office licensed with the Secretary of State are somehow legally distinct from the main Ensign-Bickford campus in Connecticut.

[4] Ensign-Bickford relies on two Arizona state cases, rather than Federal Circuit cases, in support of its position that it is not subject to general jurisdiction in Arizona, both of which are inapposite to the court's holding in this case. First, it asserts that the mere act of naming a registered agent for service of process in a state does not subject a corporation to general jurisdiction. *See Armstrong v. Aramco Services Co.*, 746 P.2d 917, 924 (Ariz. Ct. App. 1987). In that case, one of the defendants was qualified to do business in Arizona, but none of the defendants owned any facilities in Arizona or had any employees in Arizona. Rather, the defendants generally recruited employees from Arizona to work elsewhere. *See id.* at 918-19. Accordingly, *Armstrong* stands for the proposition that sporadic contacts coupled with

Having determined that the plaintiffs have made a *prima facie* showing that Ensign-Bickford has sufficient minimum contacts with Arizona, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *See Burger King Corp.*, 471 U.S. at 476-77. Ensign-Bickford has not presented a compelling case demonstrating that exercising jurisdiction in this case would be unreasonable. Accordingly, the court **DENIES** Ensign-Bickford's Motion to Dismiss for Lack of Personal Jurisdiction.

## III. Motion to Dismiss for Improper Venue Pursuant to 28 U.S.C. § 1406

Next, Ensign-Bickford moves this court to dismiss the Complaint for improper venue under 28 U.S.C. § 1406. Ensign-Bickford argues that venue in Arizona is improper because the plaintiffs failed to establish personal jurisdiction in Arizona. (Def.'s Mot. Dismiss, at 9.) Ensign-Bickford additionally argues that the plaintiffs failed to show that a substantial part of the events giving rise to the claim occurred in Arizona. (*Id.* at 9-10.) The plaintiffs maintain that "[v]enue is proper in this Court . . . because Ensign-Bickford is subject to personal jurisdiction in this district and thus resides in this district, and a substantial part of the alleged events or omissions giving rise to the claims occurred in this district." (Compl. ¶ 4.)

---

registration as a corporation to do business in Arizona are insufficient to subject it to general jurisdiction. Second, Ensign-Bickford maintains that its office in Arizona does not subject it to general jurisdiction in Arizona. *See, e.g.*, *Van Denburgh v. Tungsten Reef Mines Co.*, 63 P.2d 647, 651 (Ariz. 1936) (finding no personal jurisdiction in Arizona in an action brought by an administrator of a deceased stockholder—who was appointed by a California court—to set aside a contract entered into in California by directors of a Nevada corporation, even though the Nevada corporation had an office in Arizona and had designated a statutory agent in Arizona, because there was no "attempt to protect the rights of any citizen of Arizona"). Not only are the facts in *Van Denburgh* distinguishable, but the case predates *International Shoe* and thus has little, if any, precedential value.

Section 1406(a) of Title 28 provides that "[t]he district court in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.§ 1406(a). Venue in actions not founded solely on diversity of citizenship is proper when brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). If the defendant is a corporation, it "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *see VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990), *cert. denied*, 499 U.S. 922 (1991).

The court finds that venue is proper under 28 U.S.C. § 1391 (b) and (c) because general personal jurisdiction exists over Ensign-Bickford in Arizona. Accordingly, Ensign-Bickford's motion to dismiss under § 1406(a) is **DENIED**.

## IV.    Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404

In a separate motion, Ensign-Bickford moves the court to transfer this case to the United States District Court for the District of Connecticut under 28 U.S.C. § 1404. According to Ensign-Bickford, because the allegedly infringing components of the SEA™ product are made by PSEMC-California, not PSEMC-Arizona, the plaintiffs' chosen venue of Arizona is entitled to less deference. Additionally, the defendant contends that the plaintiffs' choice is entitled to less deference because PSEMC filed suit to preempt Ensign-Bickford's choice of forum. Turning to public interest factors, Ensign-Bickford argues that due to docket congestion in Arizona, a strong public policy favoring

settlement, and the plaintiffs' attempted forum-shopping, transferring the case to Connecticut is appropriate and in the interests of justice. Finally, Ensign-Bickford asserts that Connecticut would have compulsory process over relevant non-party witnesses, that relevant documents are located in Connecticut, and that litigation would be less expensive in Connecticut. The plaintiffs oppose the motion by arguing that their choice of forum should be entitled to substantial deference. According to the plaintiffs, deference should be strong here because "plaintiff chose to file suit in its home forum and where it has its base of operations." (Pls.' Resp. Def.'s Mot. Transfer [Docket 41], at 4.) The plaintiffs also maintain that they are not forum-shopping, but merely trying to resolve an long-running dispute. According to PSEMC, transferring the case to Connecticut would simply shift the inconvenience from one party to another. Thus, PSEMC asserts, such a transfer is inappropriate and fundamentally against the interests of justice.

    a.    Standard of Review

Section 1404(a) of Title 28 authorizes a district court to transfer a case to another judicial district "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). This motion to transfer pursuant to § 1404(a) is governed by regional circuit law. *See Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

In deciding whether to transfer a case under § 1404(a), a court must first determine whether the action might "have been brought" in the transferee district. Then the court must weigh both public factors and private factors. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Courts may consider: (1) the location where the relevant agreements were negotiated and executed; (2) the state most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' contacts with the forum state; (5) events related to the cause of action that took place

-12-

in the forum state; (6) differences in cost of litigation between the two forums; (7) availability of compulsory process for non-party witnesses; and (8) ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

The party bringing a motion for transfer—here, the defendant—bears the burden of showing the propriety of transfer. *Decker Coal Co.*, 805 F.2d at 843. Moreover, the plaintiff's choice of forum is accorded great weight. *See Tuazon v. R.J. Reynolds Tobacco, Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006) ("[A] plaintiff need not select the optimal forum for his claim, but only a forum that is not so oppressive and vexatious to the defendant as to be out of proportion to plaintiff's convenience.") (internal quotation marks omitted). The decision whether to transfer a matter to another district under § 1404(a) is committed to the sound discretion of the district court. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

b.  <u>Discussion</u>

As Ensign-Bickford notes, there is no requirement under § 1404(a) that a transferee court have personal jurisdiction over the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). Because Ensign-Bickford is registered to do business in Connecticut and has its principal place of business in Connecticut, for purposes of § 1404(a), this case could have been brought in the District Court for the District of Connecticut. My inquiry, therefore, focuses on whether Ensign-Bickford has met its burden of establishing that a transfer to the District of Connecticut is proper.

1.  Location Where the Relevant Agreements Were Negotiated and the State Most Familiar with the Governing Law.

The first factor does not influence the court's decision because there are no "relevant agreements" at issue in this case. The second factor favors Arizona, although not strongly. Arizona

is most familiar with the Arizona state law claim, but the federal courts are equally familiar with the federal patent law issues presented in this case.

2.    The Plaintiffs' Choice of Forum

The parties dispute the weight that should be given to the plaintiffs' choice of forum. Ensign-Bickford argues that Arizona is not the home forum because PSEMC-California is the "entity that makes the potentially infringing products, not Pacific-Arizona." Therefore, Ensign-Bickford contends, the plaintiffs' choice of Arizona is entitled to less deference. (Def.'s Mot. Transfer [Docket 37], at 7.) The plaintiffs assert that PSEMC operates as a single company with its "base" in Arizona and that "PSEMC's president in Chandler, Arizona, is ultimately responsible for the accused product, including its production. Moreover, part of the accused product is manufactured by PSEMC in its Chandler, Arizona facility." (Pls.' Resp. Def.'s Mot. Transfer [Docket 41], at 4-5.) Accordingly, PSEMC argues that Arizona is the home forum and the plaintiffs' choice should be given substantial deference.

Under § 1404(a), a plaintiff's choice of forum is generally accorded substantial weight. *See Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1044 (D. Ariz. 2004). "However, when the plaintiff's chosen forum is not his residence, or when the plaintiff's forum lacks a significant connection to the events that gave rise to the Complaint, the deference given to Plaintiff's choice of forum is slight, if any." *Leyvas v. Bezy*, No. CV 07-1032, 2008 WL 2026276, at *5 (D. Ariz. May 9, 2008) (unpublished).

PSEMC-Arizona's principal place of business is in Arizona. PSEMC's president, based in Arizona, is "ultimately responsible for the accused product." (Pls.' Resp. Def.'s Mot. Transfer, at 7.) Moreover, according to the plaintiffs, roughly two dozen Arizona employees work or have

-14-

worked on the product at issue, and components of the accused product were designed in Chandler, Arizona, and others were manufactured there. (Pls.' Resp. Def.'s Mot. Dismiss, at 2-3.) Finally, PSEMC asserts that several of the letters and emails exchanged during their discussions regarding the patents at issue went to and from Arizona, and Ensign-Bickford's president met with PSEMC representatives in Arizona to discuss the dispute. (Pls.' Resp. Def.'s Mot. Transfer, at 5.) Thus, because Arizona has significant connections to the events that gave rise to the Complaint, the plaintiffs' choice of forum is accorded substantial weight.

Alternatively, Ensign-Bickford argues that this declaratory judgment was simply a race to the courthouse and, as a result, the choice of forum should be given little deference. PSEMC asserts that this is not an attempt at forum-shopping because Connecticut does not have personal jurisdiction over PSEMC; thus, PSEMC is not preempting Ensign-Bickford from filing there. Additionally, the plaintiffs assert that they are seeking to resolve a long-running dispute by clearing their name and clarifying legal rights.

Despite the futility of any further negotiations, there is no evidence that Ensign-Bickford was poised to file suit, and Ensign-Bickford has not filed a patent infringement suit to date. *Cf. Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) ("A suit is anticipatory when the plaintiff filed [an action] upon receipt of specific, concrete indications that a suit by defendant was imminent."). The court finds that PSEMC's declaratory judgment action was not anticipatory and the forum-shopping argument lacks merit. Therefore, the weight awarded the plaintiffs' choice of forum is not affected.

In sum, because Arizona has a significant connection to the events that gave rise to the Complaint and because there is no evidence of forum-shopping, the plaintiffs' choice of forum is

awarded considerable weight. Accordingly, this factor weighs against transferring this case to Connecticut.

### 3. Parties' Contacts with the Forum State

Both parties in this case have contacts with Arizona. PSEMC is based in Arizona and the disputed product was designed and created in Arizona, as well as California. PSEMC's president is in Chandler, Arizona, and PSEMC's vice president and members of the design and development team split their time between Arizona and California. Even if, as the defendant argues, the components manufactured in Arizona are not the infringing components of the product, the plaintiffs maintain significant contacts with the forum state. Ensign-Bickford also has significant ties to the forum state. Ensign-Bickford is registered to do business in Arizona, has designated a registered agent for service of process in Arizona, and has employees who operate full-time out of an office in Arizona. Both parties' numerous contacts with the forum state persuade the court that this factor weighs strongly in favor of the Arizona venue.

### 4. Events Related to the Cause of Action That Took Place in the Forum State

"Courts have observed that intellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 791-92 (S.D. Tex. 2005) (internal quotations omitted).

In the instant case, numerous events related to the cause of action, including design work and product manufacturing, allegedly took place in Arizona. Moreover, according to Ensign-Bickford, the majority of additional events related to the cause of action took place in California. Either way,

this factor does not weigh in favor of transferring the case to Connecticut.[5]

> 5. Differences in Cost of Litigation Between the Two Forums and Ease of Access to Proof

With respect to this factor, Ensign-Bickford mainly argues that "highly relevant documents are located in Connecticut" and that "[i]f the trial is held in Connecticut . . . the material witnesses located in Connecticut will not have to travel [and] the total cost of litigation will be reduced." (Def.'s Mot. Transfer, at 14.) The defendant also notes that the plaintiffs' witnesses in California will have to travel regardless of whether the trial is held in Arizona or Connecticut. These arguments are unpersuasive. There are relevant documents in Arizona and Connecticut, so that issue does not persuade the court that transfer is appropriate. Moreover, the plaintiffs have named several key witnesses who either reside in Arizona or split time between Arizona and California. The court has no way of determining where these witnesses will be located at the time of the trial or whether they will need to travel to attend the trial. Accordingly, this factor does not weigh heavily in the determination of whether to transfer to Connecticut.

> 6. Availability of Compulsory Process for Non-Party Witnesses

Ensign-Bickford asserts that a named inventor for all three patents at issue resides in Connecticut. The attorney familiar with the prosecution of the applications of the patents is also in Connecticut. Finally, Ensign-Bickford asserts that "[o]ther witnesses with relevant testimony also reside in Connecticut," and Connecticut can compel the attendance of these witnesses. (*Id.* at 12.)

---

[5] Ensign-Bickford argues that a relevant confidentiality agreement was signed by PSEMC-California, not PSEMC-Arizona, and thus relevant events occurred in California. While this document lists PSEMC as having an office and place of business in California, it is unclear whether this document applies only to PSEMC-California, as Ensign-Bickford asserts. (Def.'s Mot. Transfer, at 7 n.4.)

The plaintiffs, on the other hand, maintain that other fact witnesses reside in Arizona, including potential witnesses from Raytheon, the parties' mutual customer. The willingness of non-parties to testify voluntarily mitigates the relevance of this factor, but the court cannot speculate on which witnesses would be so willing. Ensign-Bickford has identified two specific and relevant non-party witnesses in Connecticut, while PSEMC has referenced only potential non-party witnesses over whom Arizona has compulsory process. This factor weighs in favor of transfer.

7.      Other Considerations

Ensign-Bickford raises additional public interest factors that it asserts are relevant to this court's consideration, including the congestion of the Arizona docket and the public policy favoring settlement. Docket congestion is one of many factors that may be considered in a motion to transfer, but it does not persuade this court that transfer is appropriate in light of the other factors that weigh against a transfer. Next, although Ensign-Bickford argues that the public policy of settlement favors transfer to Connecticut, it fails to adequately explain how transfer to Connecticut advances this policy. The court recognizes that "the first to file rule in [a race to the courthouse situation] would thwart settlement negotiations, encouraging intellectual property holders to file suit rather than communicate with an alleged infringer." *Z-Line Designs, Inc*., 218 F.R.D. at 665. In this case, however, the first to file rule is inapposite as there are no similar suits pending elsewhere. Accordingly, Ensign-Bickford's public interest arguments are not sufficient to persuade the court that transfer to

Connecticut is appropriate.[6]

_____

[6] In its Motion to Dismiss, Ensign-Bickford urges the court to decline to exercise its jurisdiction under the Declaratory Judgment Act because the parties' negotiations were ongoing

-18-

Having considered all of the factors set forth in *Jones* and the relevant public interest factors, the court concludes that a transfer to Connecticut for convenience or in the interests of justice is unwarranted. The plaintiffs' choice of forum is accorded considerable weight, and a transfer motion will be denied if it would merely shift the inconvenience from the defendant to the plaintiffs. *Decker Coal*, 805 F.2d at 843. In addition, the court is unconvinced that Ensign-Bickford will suffer any great hardship by litigating away from home in Arizona. In light of the factors above, the court **DENIES** the Motion for Transfer of Venue pursuant to §1404(a).

## V.       Motion to Dismiss Count Four for Failure to State a Claim

Finally, Ensign-Bickford moves this court to dismiss the state law tortious interference with a contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiffs, according to Ensign-Bickford, have not alleged that Ensign-Bickford "had knowledge of the contracts with which Ensign allegedly interfered[,]" (Def.'s Mot. Dismiss, at 15) and that the claim does not "provide notice of what contracts are the subject of the claim, and which customers were induced to breach

---

and the plaintiffs brought their action simply as "tactical maneuvering designed to preempt Ensign's choice of forum." (Def.'s Mot. Dismiss, at 13.) "The Declaratory Judgment Act was not intended to affix competitor with a right to feign negotiation in order to delay patentee's filing of an infringement in an effort to secure a preferable forum." *Trading Tech. Int'l Inc. v. CGQ, Inc.*, No. 05 C 4811, 2005 WL 3601936, at *3 (N.D. Ill. Oct. 31, 2005) (unpublished). However, "[a]llowing competitors to sue for declaratory judgment serve[s] to clear the air, protect their customers, and to define their rights without accumulating injuries related to waiting for patentee to decide whether to bring suit." *Id.* In the instant case, the court finds that there is no sound basis for refusing to adjudicate the matter. In fact, this appears to be one of the situations the Act was designed to accommodate. Accordingly, the court will exercise its valid jurisdiction to hear this case under the Declaratory Judgment Act. "When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstances the declaratory judgment action is not subject to dismissal." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (overruled in part on other grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)).

their contracts." (*Id.*)  In response, the plaintiffs assert that  they sufficiently pled Ensign-Bickford's

knowledge of the contracts and that "Ensign itself informed PSEMC that it had contacted PSEMC's

customers to obtain information."  (Pls.' Resp. Def.'s Mot. Dimiss, at 15.)  Thus, according to the

plaintiffs, Ensign-Bickford knows with whom there was a business expectancy and which customers

were induced to breach their contracts.

    a.       <u>Standard of Review</u>

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or

pleading.  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).  A pleading must contain a "short

and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  As

the Supreme Court reiterated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual

allegations' but 'it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation.'"  129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007)).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986),

for the proposition that "on a motion to dismiss, courts 'are not bound to accept as true a legal

conclusion couched as a factual allegation'").  A court cannot accept as true legal conclusions in a

complaint that merely recite the elements of a cause of action supported by conclusory statements.

*Iqbal*, 129 S. Ct. at 1949-50.  "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 1949

(quoting *Twombly*, 550 U.S. at 570).  To achieve facial plausibility, the plaintiff must plead facts that

allow the court to draw the reasonable inference that the defendant is liable, and those facts must be

more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id.*

In determining whether a plausible claim exists, the court must undertake a context-specific inquiry, "[b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). A complaint must contain enough facts to "nudge[] [a] claim across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

    b.   <u>Discussion</u>

The Supreme Court of Arizona recognizes a cause of action for tortious interference with a contract.[7] *Safeway Ins. Co., Inc. v. Guerrero*, 210 Ariz. 5, 10 (2005). The first issue raised by the defendant is whether the Complaint sufficiently pled that Ensign-Bickford had knowledge of PSEMC's valid contractual relationship or business expectancy.

The Complaint alleges:

> Ensign-Bickford intentionally and improperly interfered with contracts between PSEMC and several confidential customers by, *inter alia*, inducing those customers to disclose PSEMC's highly confidential, proprietary and sensitive competitive information to Ensign-Bickford in violation of those customers' confidentiality agreements with PSEMC.

(Compl. ¶ 40.)

---

[7] To establish tortious interference, a party must prove the following:
        1) existence of a valid contractual relationship;
        2) knowledge of the relationship on the part of the interferor;
        3) intentional interference inducing or causing a breach;
        4) resultant damage to the party whose relationship has been disrupted; and
        5) that the defendant acted improperly.
*Safeway Ins. Co., Inc. v. Guerrero*, 210 Ariz. 5, 10 (2005).

Although the Complaint does not explicitly state that Ensign-Bickford had knowledge of the contracts, it follows from PSEMC's allegation that Ensign-Bickford "intentionally . . . interfered with contracts" that Ensign-Bickford knew the contracts existed.

The defendant also argues that the Complaint does not provide notice of "what contracts are the subject of the claim, and which customers were induced to breach their contracts." (Def.'s Mot. Dismiss, at 15.) Although the Complaint does not point to individual contracts, its allegation that the defendant induced the plaintiffs' customers to violate a specific class of contracts, namely, their confidentiality agreements with PSEMC, survives a motion to dismiss. *See Swingless Golf Club Corp. v. Taylor*, No. C 08-05574, 2009 WL 2031768, at *4 (N.D. Cal. Jul. 7, 2009) (finding a complaint stated a claim even though it "does not point to any single contract, it does allege a specific class of existing contracts that the defendants purportedly induced the breach thereof—those existing between plaintiff and its customers"). The court thus **FINDS** that the plaintiffs have satisfied their burden as to the intentional interference with a contract claim.[8] Accordingly, the court **DENIES** the defendant's Motion to Dismiss Count Four.

## VI.    Conclusion

_____

[8] Ensign-Bickford additionally argues that the claim is preempted by the Arizona Uniform Trade Secrets Acts ("UTSA"). Under Arizona law, however, a claim is not preempted "to the extent that the [complaint] alleges that the intentional interference of business expectancy is based on acts, other than the misappropriation of trade secrets, that 'induc[ed] or otherwise caus[ed] a third person not to enter into or continue' a business relationship with [the plaintiff]." *Cosmetic Alchemy, LLC v. R & G, LLC*, No. CV-10-1222, 2010 WL 4777553, at *3 (D. Ariz. Nov. 17, 2010); *see also* A.R.S. § 44-407(A) (the UTSA does not affect "[o]ther civil remedies that are not based on misappropriation of a trade secret.").

The plaintiffs are not alleging misappropriation of trade secrets. Rather, the plaintiffs allege that Ensign-Bickford contacted PSEMC customers and induced them to violate their confidentiality agreements. In doing so, Ensign-Bickford is "taking away PSEMC's customer opportunities, and has caused damage to PSEMC's relationships with its customers." (Compl. ¶ 41.) Therefore, the court finds that Count Four is not preempted by the UTSA.

For the foregoing reasons, the court **DENIES** Ensign-Bickford's Motion to Dismiss for Lack of Personal Jurisdiction, for failure to state a claim, and for transfer pursuant to § 1406(a) [Docket 18].  The court further **DENIES** the Motion for Transfer of Venue pursuant to § 1404(a)  [Docket 37].

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 23, 2011

Joseph R. Goodwin, Chief Judge